```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE
```

Rex Landry,
    Plaintiff

    v.                                  Case No. 16-cv-507-SM
                                        Opinion No. 2017 DNH 152
Time Warner Cable, Inc., and
Thompson Reuters Corporation,
    Defendants


                           **O R D E R**


    Plaintiff, Rex Landry, filed this putative class action against his former employer, Time Warner Cable, alleging that Time Warner violated various provisions of the federal Fair Credit Reporting Act ("FCRA"), as well as New Hampshire's statutory analogue.  He also claims Time Warner wrongfully terminated his employment and, in so doing, violated New Hampshire's Whistleblower Protection Act.  Finally, Landry advances two claims against Thompson Reuters Corporation, asserting that it is a "consumer reporting agency" and that it, too, violated various provisions of the FCRA.

    Pending before the court is Time Warner's motion to compel arbitration and to dismiss (or stay) this action.  Landry

objects.  For the reasons stated, Time Warner's motion is granted in part and denied in part, albeit without prejudice.

**Standard of Review**

As several district courts in this circuit - including this one - have observed, the Court of Appeals has "yet to address the proper standard of review for a motion to compel arbitration."  Pla-Fit Franchise, LLC v. Patricko, Inc., No. 13-CV-489-PB, 2014 WL 2106555, at *3 (D.N.H. May 20, 2014) (Barbadoro, J.) (citing cases).  See also Ouadani v. Dynamex Operations E., LLC, No. CV 16-12036-PBS, 2017 WL 1948522, at *1 (D. Mass. May 10, 2017) ("The First Circuit has not stated what standard the movant should be held to at this stage, although some courts have applied a summary judgment standard.").

Here, as in Pla-Fit, supra, neither party has addressed the appropriate standard of review.  And, as in Pla-Fit, both parties have relied upon documents and affidavits beyond those attached to, or referenced in, Landry's complaint.  Accordingly, the court will employ the familiar summary judgment standard of review in resolving Time Warner's motion to compel arbitration.  See Id. at *3.  Applying that standard, the court reviews the record in the light most favorable to Landry, and draws all reasonable inferences in his favor.  See Block Island Fishing,

2

Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Time Warner is entitled to the relief it seeks only if the record reveals "no genuine dispute as to any material fact" and judgment follows as a matter of law.  See Fed. R. Civ. P. 56(a).  In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit."  Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).

**Background**

Landry doesn't recall many of the details related to his application and hiring by Time Warner.  See Declaration of Ryan Landry (document no. 17-2).  But, Time Warner has filed several documents that lay out the essential aspects of that process.  Those business records reveal that on June 13, 2015, Landry submitted an online application for employment with Time Warner.  In it, he provided a Yahoo email address so Time Warner could communicate with him electronically.  See Online Job Application (document no. 21-2).  About one month later, on July 15, 2015, Time Warner sent Landry the first of two emails, conditionally offering him a job with the company, subject to verification of his personal/employment information and conditioned upon his

3

successful completion of what Time Warner calls its online "onboarding process." Landry was provided with a unique user name and password to log into that system and complete the process.

The following day, at approximately 10:56 a.m., Landry accessed the "onboarding" website and began the process of completing a W-4 form and providing personal information such as his emergency contact information and bank routing directions for his payroll check. As part of that process, Landry was also required to review (and acknowledge that he had reviewed) several documents relating to the conditions of his employment. Those documents included, for example, Time Warner's EEOC Statement, its policy on unlawful harassment, its statement that it is a drug-free workplace, the employee code of conduct, and company safety practices. Importantly, it also included a "Mutual Agreement to Arbitrate." At approximately 12:14 p.m. on July 16, 2015, Landry acknowledged having read the terms of that arbitration agreement and he electronically accepted and "signed" the same. See Onboarding Status Details (document no. 14-5) at 3. See also Declaration of Chance Cassidy (document no. 14-2) at para. 10. Indeed, if Landry had declined to accept any of the policies or agreements set forth on the onboarding website - including the Mutual Agreement to Arbitrate - he would

4

not have been hired by Time Warner.  See Id. at paras. 13 and 16.  See also "Welcome to Time Warner Cable" Email (document no. 21-3), dated July 15, 2015 (informing Landry that "All required information **MUST** be submitted in the Onboarding system.  You are responsible for timely submission through the site of all required documents.  Please be advised that all offers are subject to successful completion of the pre-employment process and background verification.") (emphasis in original).

The Mutual Agreement to Arbitrate provides that, by signing that document and accepting employment with Time Warner:

> you and Time Warner Cable ("TWC," as defined below) agree that any and all claims, disputes, and/or controversies between you and TWC arising from or related to your employment with TWC shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").

Document no. 14-3 at 1 (emphasis supplied).  The agreement then provides several examples of employment-related disputes that are subject to arbitration.  Finally, in bold typeset, the agreement contains a broad waiver of Landry's right to bring or participate in a class action against Time Warner.

> **REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and TWC understand, acknowledge and agree that the**

5

> **terms of this Agreement include a waiver of any rights that you or TWC may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.  This waiver does not take away or restrict your or TWC's right to pursue your or its own claims, but only requires that any such claims be pursued in your or TWC's own individual capacity, rather than on a representative, class, or collective basis.**

Id. at 1-2 (emphasis in original).

Perhaps not surprisingly, Time Warner asserts that the Mutual Agreement to Arbitrate precludes Landry from pursuing the claims asserted in this proceeding: (a) in this forum; and (b) on a representative, class, or collective basis.  Accordingly, it moves the court to dismiss (or, in the alternative, to stay) this proceeding and seeks an order compelling Landry to arbitrate his claims on an individual basis.  Landry objects.

## Discussion

It is, perhaps, worth noting at the outset that it is firmly established that, with limited exceptions not applicable in this case, the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), applies to employment contracts.  See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001). Consequently, employers and employees are generally free to

6

agree that their employment-related disputes will be resolved through arbitration, subject to the provisions of the FAA.

The question presented in this case is whether the parties actually formed an enforceable contract - that is, whether the Mutual Agreement to Arbitrate complies with New Hampshire's general principles governing contract formation and enforcement. See generally First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.") (citations omitted).  As the party seeking to compel arbitration, Time Warner must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (citation and internal punctuation omitted).

In opposing Time Warner's motion and asserting that the Mutual Agreement to Arbitrate is unenforceable on state law grounds, Landry advances three arguments.  Only one has potential merit.

I.   Landry Executed the Mutual Arbitration Agreement.

First, although he does not deny that he accessed the onboarding website, reviewed Time Warner's various employment policies and procedures, and electronically signed the Mutual Arbitration Agreement, Landry says he cannot recall having done so.  Nor does he recall having provided Time Warner with the Yahoo email address to which Time Warner sent Landry's login and password credentials.  But, as Time Warner points out, Landry's lack of recall (and absence of any denial of the material facts at issue), is insufficient to call into question any properly supported facts presented by Time Warner.  See, e.g., GT Solar Inc. v. Goi, No. 08-CV-249-JL, 2009 WL 3417587, at *9 (D.N.H. Oct. 16, 2009) ("It is well established that a claimed lack of memory is insufficient to rebut uncontroverted evidence to the contrary.") (citing Ayer v. United States, 902 F.2d 1038, 1045 (1st Cir. 1990)).  See also Haag v. United States, 485 F.3d 1, 3 (1st Cir. 2007) (a purported lack of memory about a fact is not affirmative evidence that the event did not occur and, therefore, it is insufficient to render that fact "genuinely disputed").

The records submitted by Time Warner plainly demonstrate that Landry did provide Time Warner with his Yahoo email address and he did complete the company's onboarding process with the

8

login credentials that were sent to that email address (in two separate communications). See Online Job Application at 2 (showing that on June 13, 2015, Landry provided to Time Warner his personal information, including his Yahoo email address). Additionally, those documents establish that Landry acknowledged reading the Mutual Agreement to Arbitrate and electronically signed that document. See Onboarding Status Details at 3 (documenting Landry's acceptance of the Mutual Agreement to Arbitrate at 12:14 p.m. on July 15, 2016). Those material facts are established and not "genuinely disputed."[1]

II. Unconscionability.

Next, Landry asserts that even if he did execute the Mutual Agreement to Arbitrate, it is unconscionable and, therefore,

---

[1] In his opposition memorandum, Landry suggests that if the court should be inclined to grant Time Warner's motion to compel, it should afford him "limited discovery on the subject of whether [he] signed and agreed to be bound by the arbitration agreement." Plaintiff's Memorandum (document no. 17) at 1. That request is denied. See, e.g., C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 44 (1st Cir. 1998) ("a party ordinarily may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56[d] if its first effort is unsuccessful."); Galvin v. U.S. Bank N.A., 852 F.3d 146, 165 n. 16 (1st Cir. 2017) (noting that if a party fails to file a properly supported motion for additional discovery pursuant to Rule 56(d), it is deemed to have waived any challenge to the adequacy of discovery). See generally Fed. R. Civ. P. 56(d). See also Local Rule 7.1 (requiring all motions to contain the word "motion" in the title, and providing that parties may not seek separate and distinct relief in a single filing).

unenforceable.  The parties agree that whether their arbitration agreement is enforceable against Landry must be determined under New Hampshire's law of contract formation.  On that issue, as the party challenging the enforceability of that agreement, Landry bears the burden of proof.  See <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1, 17 (1st Cir. 1999) (noting that the law imposed a "heavy burden" on those who challenge the enforceability of arbitration agreements).

In describing the circumstances under which a contract may be deemed unenforceable on grounds of unconscionability, the New Hampshire Supreme Court has observed that:

> It is not possible to define unconscionability. It is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula. Unconscionability has generally been recognized to include an <u>absence of meaningful choice</u> on the part of one of the parties together with contract terms which are <u>unreasonably favorable to the other party</u>.  The existence of gross inequality of bargaining power is also a factor to be considered.

<u>Pittsfield Weaving Co. v. Grove Textiles, Inc.</u>, 121 N.H. 344, 346 (1981) (citations and internal punctuation omitted) (emphasis supplied).  Landry says the Mutual Agreement to Arbitrate is both "procedurally" and "substantively" unconscionable, on grounds that: (1) it is an "adhesion" contract and he lacked "meaningful choice" to reject it; (2) it

was presented to him in an unfair, deceptive, and confusing manner; (3) he lacked sufficient time to review it with an attorney; (4) he did not obtain a paper copy of the agreement or the rules under which any arbitration would be conducted; and (5) because the agreement also includes a waiver of Landry's ability to participate in representative or class action litigation against Time Warner, it is "unreasonably favorable" to Time Warner and deprives Landry of "meaningful redress" of his rights. See Plaintiff's Memorandum (document no. 17-1) at 11.

This court has previously address and resolved many of the arguments advanced by Landry. See Klinedinst v. Tiger Drylac, U.S.A., Inc., No. 01-cv-040, 2001 WL 1561821 (D.N.H. Nov. 28, 2001). And, largely for the reasons discussed in Klinedinst, as well as those set forth in Time Warner's memoranda (documents no. 14-1 and 21), the court concludes that Landry has failed to demonstrate that the Mutual Agreement to Arbitrate is unenforceable on grounds that it is either procedurally or substantively unconscionable. In brief, the arbitration agreement is not - at least under the circumstances presented - an unenforceable adhesion contract. See, e.g., Rosenberg, 170 F.3d at 17. See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) (noting that disparate bargaining power,

11

standing alone, is "not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). Landry's claim that he did not "face an actual 'choice' to reject an [arbitration] agreement without facing poverty, unemployment, and/or eventual destitution," Plaintiff's Memorandum at 8 n. 6, describes a personally difficult choice, but hardly a legally unconscionable one.

Nor was the arbitration agreement presented to Landry in an unfair or confusing manner. That document consists of less than two pages and it is written in plain, easy-to-understand language. And, despite the fact that Landry gave no indication that he wished to review the agreement with an attorney before executing it, Time Warner provided him with ample time to do so if he had wished. See, e.g., "Welcome to Time Warner" Email (document no. 21-3) at 2 ("We recognize that there may be some information on the Onboarding site that you wish to review in depth, and you are welcome to visit the site as often as you want during the onboarding period. . . . All supporting documents and agreements on the web site are downloadable in a PDF format."). See also Mutual Agreement to Arbitrate (document no. 14-4) at 1 (providing a link that says, "Click Here to

Download PDF").[2]  Copies of the rules of the arbitration process, as well as the location of the relevant arbitration "resolution centers," were also made available to Landry through the onboarding website.  See Id. at 1 ("Below you will find further information on the process as well as a mutual agreement which commits both you and [Time Warner] to the arbitration process.  JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at https://www.jamsadr.com/.").

Finally, the class action waiver contained within the Mutual Agreement to Arbitrate is not itself unconscionable, nor does it render the remainder of the agreement unenforceable.  See generally Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2308 (2013) (addressing "whether the Federal

---

[2]   Landry's assertion that "the agreement presented to [him] did not contain language (subsequently added) advising employees that they could print a copy of the agreement," is, at best, misleading.  See Plaintiff's Memorandum at 11 n.10.  See also Declaration of Chance Cassidy (document no. 14-2) at para. 11 (stating that the language subsequently added to the newer version of the Mutual Agreement to Arbitrate provided, "PLEASE NOTE, IF YOU WISH TO RETAIN A COPY OF THIS MUTUAL AGREEMENT TO ARBITRATE YOU SHOULD SAVE OR PRINT IT FOR YOUR RECORDS.").  To the extent Landry is attempting to imply (as it seems he is) that a copy of the agreement was not readily available to him, that implication would appear to be false.  Compare Mutual Arbitration Agreement ("Click Here to Download PDF") with Plaintiff's Memorandum at 11 ("TWC did not provide a paper copy of the Arbitration Agreement or an electronic copy of the Arbitration Agreement that would be easily transmittable.") (emphasis supplied).

13

Arbitration Act permits courts to invalidate arbitration agreements on the ground that they do not permit class arbitration of a federal-law claim."). Importantly, the class action waiver at issue in this case does not preclude Landry from pursuing any federal (or state) causes of action he might have against Time Warner; instead, it merely provides that any such claims will be presented and resolved in an arbitral, rather than judicial, forum, and requires that they be brought on an individual, rather than a collective, basis. See Mutual Agreement to Arbitrate at 1-2 ("This waiver does not take away or restrict your or TWC's right to pursue your or its own claims, but only requires that any such claims be pursued in your or TWC's own individual capacity, rather than on a representative, class, or collective basis.").

Such clauses are not unenforceable on the grounds asserted by Landry - that is, that the "Arbitration Agreements is 'unreasonably favorable to TWC' . . . . because the class action waiver embedded in the mandatory Arbitration Agreement deprives employees of meaningful redress of their rights and solely benefits TWC." Plaintiff's Memorandum at 11. See generally Italian Colors Rest., 133 S. Ct. at 2310 ("Dismissing concerns that the arbitral forum was inadequate, we said that so long as the prospective litigant effectively may vindicate its statutory

cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function. . . . And we do so again here. . . . The class-action waiver merely limits arbitration to the two contracting parties.  It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938.").

III. Restraints of Protected Activity.

Finally, Landry asserts that the Mutual Agreement to arbitrate is unenforceable because its class action waiver represents an "unlawful restraint on [his] rights under the National Labor Relations Act."  Plaintiff's Memorandum at 16.  This argument seems to have the most substance.

Landry asks the court to apply what has become known as the "D.R. Horton Rule," which arises out of a decision issued by the National Labor Relations Board in which the Board concluded that: (1) class and collective actions are "other concerted activities" protected under Section 7 of the National Labor Relations Act; (2) agreements between employers and employees to arbitrate disputes on an individual, rather than a representative or class basis, constitute an "unfair labor practice" under Section 8 of the NLRA; and (3) the Federal

15

Arbitration Act does not preclude the Board from declaring such agreements unenforceable. In Re D.R. Horton, Inc., 357 NLRB 2277 (2012). But, the Court of Appeals for the Fifth Circuit reversed that decision, concluding that the class action waiver at issue was not rendered unenforceable by the NLRA. D.R. Horton, Inc. v. NLRB, 737 F.3d 344 (5th Cir. 2013). Specifically, the court held that an employer does not engage in an unfair labor practice by maintaining and enforcing an arbitration agreement that requires employment-related claims to be resolved through individual arbitration because: (1) the NLRA does not contain a clear congressional command prohibiting such agreements; and (2) the "use of class action procedures . . . is not a substantive right" under Section 7 of the NLRA. Id. at 357.

The Court of Appeals for the First Circuit has yet to address this issue and those courts of appeals that have are divided. But, on January 13, 2017, the United States Supreme Court granted certiorari to the Court of Appeals for the Fifth Circuit, to resolve that very issue, i.e.,

> whether arbitration agreements with individual employees that bar them from pursuing work-related claims on a collective or class basis in any forum are prohibited as an unfair labor practice under 29 U.S.C. 158(a)(1), because they limit the employees' right under the National Labor Relations Act to engage in

> "concerted activities" in pursuit of their "mutual aid or protection," 29 U.S.C. 157, and are therefore unenforceable under the saving clause of the Federal Arbitration Act, 9 U.S.C. 2.

N.L.R.B. v. Murphy Oil USA, Inc., Petition for a Writ of Certiorari, 2016 WL 4761717 (Sept. 9, 2016).[3]

Because the Supreme Court will likely resolve that dispositive question of law in the near future, it would seem unnecessary and unwise to proceed here. An authoritative and controlling description of the interplay between the NLRA and the FAA will be forthcoming shortly. Accordingly, pending the Supreme Court's decision in Murphy Oil, the court will defer ruling on that final question of law presented in Landry's objection to Time Warner's motion to compel arbitration.

## Conclusion

For the foregoing reasons, as well as those set forth in Time Warner's legal memoranda (documents no. 14-1 and 21), Time Warner's motion to compel arbitration (document no. 14) is granted in part and denied in part. With the exception of his claim that the class action waiver violates provisions of the

---

[3] The Supreme Court consolidated the Murphy Oil appeal (Case no. 16-307) with appeals out of the Seventh Circuit ("Epic Systems," Case no. 16-285) and Ninth Circuit ("Ernst & Young," Case no. 16-300).

17

NLRA, none of Landry's arguments in favor of invalidating the Mutual Agreement to Arbitrate is persuasive.

When the Supreme Court issues its decision in <u>Murphy Oil</u>, the parties shall notify the court, and propose a supplemental briefing schedule, if necessary.

**SO ORDERED.**

*[signature]*
Steven J. McAuliffe
United States District Judge

August 9, 2017

cc: Benjamin J. Wyatt, Esq.
Michael Varraso, Esq.
Abigail S. Romero, Esq.
Joseph W. Ozmer, II, Esq.
Michael D. Kabat, Esq.
Michele E. Kenney, Esq.
Eric Bosset, Esq.
Geoffrey J. Vitt, Esq.
Neil K. Roman, Esq.