UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Ryan Landry,
    Plaintiff

    v.     Case No. 16-cv-507-SM
        Opinion No. 2018 DNH 194
Thomson Reuters Corporation,
    Defendant

**O R D E R**

Plaintiff, Ryan Landry, filed this proposed class action against his former employer, Time Warner Cable, as well as Thomson Reuters Corporation. Landry alleged that Time Warner violated various provisions of the federal Fair Credit Reporting Act ("FCRA"), as well as New Hampshire's statutory analogue. He also claimed Time Warner wrongfully terminated his employment and, in so doing, violated New Hampshire's Whistleblower Protection Act. But, in the wake of the Supreme Court's decision in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018), Landry voluntarily dismissed all of those claims from this case and will pursue them in arbitration, as required by the terms of his employment contract. See generally Stipulation of Voluntary Dismissal (document no. 32).

What remain, then, are Landry's claims against Thomson Reuters Corporation ("TRC"). In his amended complaint, Landry

advances four causes of action against TRC (on behalf of himself and two proposed classes of similarly situated plaintiffs). Generally speaking, Landry asserts that TRC is a "Consumer Reporting Agency," as defined in the FCRA, and that it prepared and disseminated a report about him that contained inaccurate and out-of-date adverse information, including false statements that he had served time in a Texas prison - all in violation of the FCRA. See Amended Complaint (document no. 40) at paras. 30-34.

Pending before the court is TRC's motion to stay these proceedings pending resolution of the ongoing arbitration between Landry and Time Warner. In TRC's view, Landry's claims against it are entirely derivative of those against his former employer. Specifically, TRC says Landry lacks standing to pursue his claims against it unless he can establish a causal connection between his injury (i.e., loss of his job) and Time Warner's reliance upon the allegedly inaccurate and/or outdated information contained in the report TRC prepared and disseminated. That is to say, Landry must demonstrate some particularized and concrete harm flowing from TRC's alleged violations of the FCRA. And, because Time Warner denies that it discharged Landry for any reason related to that report (an issue that will be resolved in arbitration), TRC asserts that

2

principles of judicial economy counsel in favor of staying these proceedings.  If, says TRC, the arbitrator determines that Landry was fired for reasons unrelated to TRC's report, then Landry cannot show any injury flowing from TRC's alleged statutory violations.  Under those circumstances, he would lack standing to pursue any FCRA claim against TRC.

Landry, on the other hand, does not directly address the issue of standing.  Rather, he asserts that because he seeks both actual <u>and</u> statutory damages for TRC's alleged violations of the FCRA, there is no reason to delay this proceeding while he pursues his claims against Time Warner in arbitration. According to Landry, the reason Time Warner fired him, and whether it relied upon TRC's allegedly improper report, are immaterial to this litigation; he need not establish a causal connection between TRC's statutory violations and his harm. Instead, says Landry, he can still recover statutory damages from TRC without a showing of any actual injury; to recover statutory damages, he merely needs to show that TRC willfully violated one or more provisions of the FCRA. <u>See</u> Plaintiff's Objection (document no. 41) at 6.  <u>See generally</u> 15 U.S.C. § 1681n (authorizing the recovery of statutory damages).

While the parties' briefs are not entirely helpful (since they seem to be arguing different points), the court concludes

that even if Landry's discharge was not directly linked to TRC's alleged violations of the FCRA, his amended complaint adequately alleges particularized, concrete harms stemming from those violations sufficient to vest him with standing to pursue his claims. Nevertheless, establishing that Landry has standing to pursue his claims against TRC does not resolve the question of whether a stay is appropriate.

Because Landry is seeking actual damages from TRC - that is, damages stemming from the loss of his job with Time Warner - a stay of these proceedings would seem entirely appropriate, pending resolution of the arbitration proceedings between Landry and Time Warner.

**Background**

Accepting the factual allegations of Landry's amended complaint as true - as the court must at this juncture - the relevant facts are as follows. In July of 2015, Landry applied for a job with Time Warner. As part of that application process, Landry authorized Time Warner to conduct a pre-hiring background check. That background check revealed - correctly, it would seem - that Landry had no criminal history. On August 7, 2015, Time Warner hired Landry as a "retail specialist" in its Gorham call center.

Landry claims he performed his job duties in a satisfactory manner and soon became one of the highest performing sales people in the call center. But, on December 3, 2015, he was called into a meeting with two members of Time Warner's corporate security division. Landry says that during the course of that meeting, one of Time Warner's representatives accused him of having been convicted of a crime (and having served a prison sentence) in Texas, and he began asking Landry questions about that alleged conviction. Landry denied having ever been convicted of a crime in Texas or having served a criminal sentence there. He claims the Time Warner representative responded by saying, "Funny, you have the same date of birth and Social Security Number as the Ryan Landry who served time in Harris County, Texas." Amended Complaint at para. 24. At the close of that meeting, Landry says he was suspended without pay "because the Corporate Security Division had received information through a report that made them believe that Mr. Landry had been convicted of a crime in Texas." Id. at para. 27.

Based upon that interaction, Landry inferred that Time Warner must have conducted another background check on him - one he says he never authorized and of which he was unaware.

Indeed, he specifically alleges that Time Warner "utilized an unauthorized consumer report to run a background check on Mr. Landry which it obtained through [TRC's] CLEAR (Consolidated Lead Evaluation and Reporting) service." Id. at para. 29. Landry further alleges that the report provided by TRC "included adverse information that was more than seven years old, including, but not limited to, arrests and/or dismissals of criminal counts from 2000" - much of which he says is wholly inaccurate. Id. at 32. Finally, he claims that TRC "knew or should have known that [Time Warner] would use the information in the [report], in whole or part, for the purposes of establishing Mr. Landry's eligibility for employment." Id. at 33.

In the days following his suspension, Landry contacted officials at the Harris County prison and confirmed that a person who shares his name did indeed serve time there. However, neither that individual's birth date nor his social security number is the same as Landry's. Landry then contacted Time Warner and explained what he had learned. He says Time Warner acknowledged that there had been a mistake and admitted that Landry had not lied on his job application. "Despite this, [Time Warner] informed Mr. Landry that the Company had nonetheless decided to terminate his employment." Id. at para.

38. Time Warner explained that Landry was being fired for a reason entirely unrelated to the confusion concerning his background - that is, for having violated workplace conduct rules. Landry says he was provided with few details about the alleged incident that formed the basis of his termination and asserts that it is a pretext for some sort of unlawful conduct. As noted above, those FCRA and employment-related claims against Time Warner - including Landry's claim that Time Warner terminated his employment based upon inaccuracies in the TRC report - are no longer before the court and will be resolved in arbitration.

After he dismissed his claims against Time Warner in this proceeding, Landry filed an amended complaint against TRC. In it, Landry alleges that TRC violated the Fair Credit Reporting Act in four ways: (1) it provided Time Warner with a consumer credit report without certifying that Time Warner had disclosed to Landry that the report was being procured for employment purposes and without providing a summary of Landry's rights with respect to that report, see 15 U.S.C. § 1681b(b); (2) it failed to notify Landry of the fact that it was reporting public record information and failed to maintain strict procedures to insure that such public record information was complete and up-to-date, see 15 U.S.C. § 1681k(a); (3) it failed to follow reasonable

7

procedures to assure the maximum possible accuracy of the information provided in the reports it prepared, see 15 U.S.C. § 1681e(b); and (4) it provided outdated, adverse information that antedated the report by more than seven years, see 15 U.S.C. § 1681c(a). Landry seeks actual damages for injuries proximately caused by TRC's violations of the FCRA or, in the alternative, statutory damages. He also moves the court to appoint him to represent the classes identified in his amended complaint, and to certify those classes pursuant to Rule 23(b)(3) and/or (b)(2).

As mentioned earlier, TRC moves the court to stay these proceedings, pending the resolution of Landry's claims against Time Warner, which are currently the subject of arbitration.

**Discussion**

I. <u>Authority to Stay Proceedings</u>.

It has long been recognized that, as part of its inherent authority to manage its docket, a federal district court has "the power to stay proceedings when, in the court's exercise of its discretion, it deems such a stay appropriate." <u>Emseal Joint Sys., Ltd. v. Schul Int'l Co.</u>, 2015 DNH 066, 2015 WL 1457630 at *1, (D.N.H. March 27, 2015). See also <u>Baggesen v. Am. Skandia Life Assur. Corp.</u>, 235 F. Supp. 2d 30, 33 (D. Mass. 2002)

("Where a case involves both arbitrable and non-arbitrable claims, whether the non-arbitrable claims should be stayed pending resolution of the arbitrable claims is generally discretionary with the court."). In determining whether it is appropriate to stay litigation pending the outcome of related arbitration proceedings, courts consider several factors, including: (1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay could serve to clarify and/or simplify the remaining issues to be litigated; and (3) whether the case is at an early stage (e.g., whether discovery has been completed, whether a trial date has been set, etc.). See, e.g., Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 20 (1st Cir. 1986). See also Emseal, 2015 WL 1457630 at *2 (considering similar factors in the context of resolving a motion to stay patent litigation pending patent reexamination).

Here, TRC asserts that all relevant factors counsel in favor of granting its requested stay. But, its focus is primarily on the second of those factors: whether staying this proceeding while Landry arbitrates his claims against Time Warner would clarify and/or simplify the issues to be litigated in this case.

II. <u>Standing and the Nature of Landry's Claims</u>.

The parties disagree on a legal issue that is potentially dispositive of TRC's motion to stay: whether Landry's claims against TRC are "derivative" of those he is pursuing against Time Warner in arbitration - that is, whether Landry must first demonstrate that Time Warner relied upon TRC's report in order to prevail on his claims against TRC. TRC asserts that Landry lacks standing to pursue FCRA claims against it unless he can show some actual, concrete harm - such as his discharge from Time Warner - that was proximately caused by either the alleged flaws in the report TRC provided to Time Warner or TRC's other alleged violations of the FCRA. Landry does not directly address the issue of standing. Instead, he simply asserts that his claims against TRC are not in any way linked to, or derivative of, those against his former employer. That is, Landry says that regardless of whether or not Time Warner terminated his employment based upon the contents of the TRC report, he can still pursue claims against TRC and recover statutory damages from it for its (alleged) willful violations of the procedural requirements of the FCRA. <u>See generally</u> 15 U.S.C. § 1681n (authorizing the recovery of statutory damages).

The United States Supreme Court recently addressed the issue of standing in the context of FCRA claims and began by noting that Article III standing consists of three elements:

"The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). The Court then observed that, "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected' interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560).

In the context of an FCRA claim, the Court concluded that, to have standing, a plaintiff must have suffered some actual harm – that is, an "injury in fact." A claim alleging a "bare procedural violation" of the FCRA, "divorced from any concrete harm," is insufficient. Consequently, the Court noted, a plaintiff does not necessarily have standing simply because he or she can identify some procedural statutory violation in a setting in which Congress has made statutory damages available to those who are unable (or for whom it would be difficult) to prove actual damages.

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a

> statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. See Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing"); see also Lujan, supra, at 572.

Spokeo, 136 S. Ct. at 1549.

Critically, however, the Court also held that, under certain circumstances, violations of the FRCA's procedural requirements can be sufficiently severe to constitute an "injury in fact" for standing purposes. See Spokeo, 136 S. Ct. at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. . . . [A] plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.") (emphasis in original) (citing Federal Election Comm'n v. Akins, 524 U.S. 11, 20–25 (1998); Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989)).

In other words, some violations of the FCRA may be so trivial that they cause no quantifiable injury. The Supreme Court gave two examples of such inconsequential violations of the FCRA: the inclusion in a credit report of an inaccurate zip

code; and, despite violations of FCRA procedural requirements, the dissemination of an entirely accurate credit report. Spokeo, 136 S. Ct. at 1550.  Other violations of the FCRA, however, may be sufficiently severe that those statutory violations alone constitute a concrete and particularized injury.  See generally Macy v. GC Servs. L.P., 897 F.3d 747, 756 (6th Cir. 2018) ("In sum, Spokeo categorized statutory violations as falling into two broad categories: (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest; and (2) where there is a 'bare' procedural violation that does not meet this standard, in which case a plaintiff must allege 'additional harm beyond the one Congress has identified.'") (quoting Spokeo, 136 S. Ct. at 1549) (emphasis in original).  Although Landry's argument on this point is largely undeveloped, the court nonetheless concludes that his amended complaint alleges a particularized and concrete injury - at least as to some counts - sufficient to vest him with standing to pursue his claims against TRC.

Following the Supreme Court's decision in Spokeo, courts have attempted to distinguish between procedural violations of the FCRA that are "trivial" or "meaningless," and those that are sufficiently severe to cause (or present a significant risk of causing) concrete harm. See Robins v. Spokeo, Inc., 867 F.3d 1108, 1116 (9th Cir. 2017) ("Spokeo II") ("[t]he Court suggested that even if Congress determined that inaccurate credit reporting generally causes real harm to consumers, it cannot be the case that every trivial or meaningless inaccuracy does so."). So, for example, on remand from the Supreme Court, the Court of Appeals for the Ninth Circuit in Spokeo II adopted the following analytical framework:

> In evaluating [a plaintiff's] claim of harm [under the FCRA], we thus ask: (1) whether the statutory provisions at issue were established to protect his concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.

Id. at 1113. See also Strubel v. Comenity Bank, 842 F.3d 181, 190 (2d Cir. 2016) ("Thus, we understand Spokeo, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest."); Lyshe v. Levy, 854 F.3d 855,

14

859 (6th Cir. 2017) ("Spokeo allows for a bare procedural violation to create a concrete harm . . . [when it constitutes] the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent.").

Here, Landry's amended complaint adequately alleges that TRC's violations of the FCRA "actually harm, or present a material risk of harm to," the concrete interests Congress enacted the FCRA to protect. Spokeo II, 867 F.3d at 1113. Specifically, he alleges that TRC's various violations of the FCRA resulted in the dissemination of a consumer credit report without his knowledge or permission that contained outdated and materially false information - including the false statement that he was convicted of a crime, and served a prison sentence, in Texas. Plainly, those are the types of reputational harms flowing from the publication of false and damaging information that Congress sought to prevent when it enacted the FCRA. See, e.g., Spokeo, 136 S. Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk."). See also Pittman v. Experian Info. Solutions, Inc., No. 17-1677, 2018 WL 4016604, at *4 (6th Cir. Aug. 23, 2018); Syed v. M-I, LLC, 853 F.3d 492, 496-97 (9th Cir. 2017); In re Horizon Healthcare Servs. Data

Breach Litig., 846 F.3d 625, 639 (3d Cir. 2017); Sullivan v. Greenwood Credit Union, 520 F.3d 70, 73 (1st Cir. 2008). See generally 15 U.S.C. § 1681 (Congressional findings and statement of purpose).

Consequently, even if Landry cannot demonstrate that his discharge was related to TRC's credit report, his amended complaint adequately alleges concrete and particularized harms, proximately caused by TRC's violations of the FCRA, sufficient to vest him with standing.

III. A Stay is Appropriate.

Having determined that Landry has standing to pursue his claims against TRC, the court must next consider whether it is, nonetheless, appropriate to stay these proceedings pending completion of Landry's arbitration with Time Warner. It is.

In his amended complaint, Landry alleges that, as a result of TRC's willful violations of the FCRA, he (and other members of the proposed classes) "have suffered and continue to suffer damages." Amended Complaint at paras. 71, 76, 80, and 85. But, the amended complaint does not allege that any of the inaccurate or outdated factual statements about Landry as contained in the TRC report were disseminated to anyone outside of the two

16

members Time Warner's Corporate Security Division with whom he met. He does not, for example, claim he lost employment opportunities with other entities as a result of the TRC report, or that he was denied credit, or that he suffered reputation injury in the community. Accordingly, his efforts to recover "actual damages" from TRC would appear to be linked directly to his ability to establish that Time Warner relied upon TRC's report when it decided to terminate his employment.

And, as the court has noted earlier, that very issue - whether Time Warner relied upon the TRC report in reaching the decision to terminate Landry's employment - will be resolved in the ongoing arbitration. Once the arbitrator resolves that disputed factual issue, it will likely be binding on the parties in this proceeding. See generally FleetBoston Financial Corp. v. Alt, 638 F.3d 70, 79 (1st Cir. 2011). So, it seems appropriate for this court to stay this action pending resolution of that material factual question, rather than move forward at the risk of inconsistent determinations.

On balance, then, the factors relevant to the court's determination regarding appropriateness of a stay counsel in favor of such a stay. First, the pending arbitration proceedings will likely clarify and/or simplify material issues

17

to be litigated in this action.  Moreover, Landry has not suggested that a stay would cause him to suffer undue prejudice or tactically disadvantage him.  And, finally, this proceeding is at a relatively early stage: Landry filed his amended complaint against TRC less than two months ago, a scheduling order has yet to issue, and the parties have yet to engage in discovery.

## Conclusion

There are two means by which Landry might demonstrate that he has standing to bring his FCRA claims against TRC: first, he could show that he suffered actual (not speculative or conjectural) "concrete harm" as a consequence of TRC's alleged violations of the statute (e.g., the loss of his job).  See Lujan, 504 U.S. at 560-61; Spokeo, 136 S. Ct. at 1549-50.  Alternatively, he could demonstrate that the procedural violations about which he complains are, themselves, sufficiently severe to constitute an injury in fact.  The former issue will be resolved in the ongoing arbitration between Landry and Time Warner.  But, because the court concludes that Landry's amended complaint adequately alleges the latter, he has standing to pursue his claims against TRC - regardless of the outcome of the pending arbitration proceedings.

Nevertheless, the outcome of those arbitration proceedings is important for another reason: it will likely determine whether Landry has the ability to recover actual damages from TRC, or whether he will be limited simply to statutory damages.

For the foregoing reasons, Thomson Reuters Corporation's Motion to Stay Proceedings (document no. 33) is granted. The parties shall notify the court when arbitration proceedings between Landry and Time Warner have been resolved.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 24, 2018

cc: Amy E. Tabor, Esq.
    Michael A. Caddell, Esq.
    Benjamin J. Wyatt, Esq.
    Michael Varraso, Esq.
    Abigail S. Romero, Esq.
    Joseph W. Ozmer, II, Esq.
    Michael D. Kabat, Esq.
    Michele E. Kenney, Esq.
    Eric Bosset, Esq.
    Geoffrey J. Vitt, Esq.
    Neil K. Roman, Esq.